# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. C. SMITH, Minor.

UNPUBLISHED
June 7, 2018

No. 341733
Lenawee Circuit Court
Family Division
LC No. 16-000736-NA

Before: O'CONNELL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, LCS, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm). We affirm.

## I. BACKGROUND

Respondent's parental rights to two older children were terminated in 2015. LCS was removed from respondent's care in September 2016, when she was about one year old, because respondent made no positive changes since the prior termination and had no means to support LCS. The Department of Health and Human Services (DHHS) filed a petition the same day LCS was removed, citing the prior termination proceeding and respondent's report to a local Child Protective Services (CPS) office that she had given birth to LCS out-of-state. The petition also noted that respondent left LCS in the care of two individuals whose own child had recently been removed from their care and that respondent's boyfriend had a conviction for criminal sexual conduct against his sister. DHHS further asserted the doctrine of anticipatory neglect as a basis for the trial court's jurisdiction. After hearing testimony from the foster care worker and from respondent, the trial court found probable cause to support one or more of the allegations in the petition and took jurisdiction. Respondent later admitted some of the allegations. The trial court found that respondent's admissions were knowing and voluntary, found a statutory basis for termination by a preponderance of the evidence, and accepted respondent's plea of admission. After providing services to respondent for several months with inconsistent progress, DHHS filed a supplemental petition seeking termination of respondent's parental rights. Following a termination hearing, the trial court ordered termination of respondent's parental rights.

## II. DISCUSSION

### A. TRIAL COURT'S JURISDICTION

-1-

Respondent argues that her right to due process was violated when the trial court authorized the petition and took jurisdiction over LCS because the petition cited only the doctrine of anticipatory neglect without asserting sufficient allegations of abuse or neglect relating to LCS. Whether the trial court had subject-matter jurisdiction is a question of law reviewed de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). During the adjudicative phase, the trial court determines if it has jurisdiction by deciding whether there is enough evidence to support the petition allegations. *In re Kanjia*, 308 Mich App 660, 663; 866 NW2d 862 (2014). A circuit court has jurisdiction over a proceeding concerning a child under age 18 whose parent "neglects or refuses to provide proper or necessary . . . care" or whose "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent . . . is an unfit place for the juvenile to live in." MCL 712A.2(b)(1) and (2). Subject-matter "jurisdiction is established when the action is of a class that the court is authorized to adjudicate, and the claim stated in the complaint is not clearly frivolous." *In re Hatcher*, 443 Mich 426, 437; 505 NW2d 834 (1993). DHHS may file a petition when it determines that a child is at risk of harm and the "parent's rights to another child were terminated . . . ." MCL 722.638(1)(b)(*i*). "The Legislature therefore effectively codified the doctrine of anticipatory neglect and then added the additional element of a risk of harm to the child." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001).

In this case, DHHS alleged in the petition that respondent "neglected or refused to provide proper or necessary support" for LCS and that respondent's "home or environment, by reason of neglect [and] cruelty . . . is an unfit place" for LCS to live, consistent with the jurisdictional statute at MCL 712A.2(b)(1) and (2). DHHS further alleged that respondent's parental rights to two other children were previously terminated and that LCS was "at risk" while in respondent's care, consistent with MCL 722.638(1)(b)(*i*). To support these allegations, the petition maintained that respondent resided with and left LCS in the care of a person with a known CPS history and respondent was in a romantic relationship with a man with a criminal sexual history involving minors. Respondent attempts to minimize these allegations of present risk of harm to LCS, but these allegations were serious, more than merely anticipatory, and not frivolous. Further, at the preliminary hearing, the trial court heard testimony regarding these allegations, and respondent made a plea of admission to some of the allegations contained in the petition. In particular, respondent admitted that she had not made improvements following the prior termination, she had some parenting difficulties, and she had left LCS with a person who had a CPS history. Accordingly, the allegations in the original and amended petitions gave the trial court subject-matter jurisdiction, and the requisite probable cause existed to believe that this case fit within the class of cases that a trial court may hear under MCL 712A.2(b)(1) or (2).

Respondent relies on *In re Gach*, 315 Mich App 83; 889 NW2d 707 (2016), to support the proposition that the trial court erred by authorizing the petition and taking jurisdiction over LCS on the sole basis of anticipatory neglect. Respondent's reliance on *Gach* is misplaced. *Gach*, 315 Mich App at 97-101, held that MCL 712A.19b(3)(*l*), permitting termination of parental rights on the sole basis of a prior termination of parental rights, is unconstitutional. The petition in this case alleged more facts than the prior termination of respondent's parental rights, and respondent's parental rights were not terminated pursuant to MCL 712A.19b(3)(*l*). *Gach*

does not prohibit the filing of a petition pursuant to MCL 722.638(1)(b)(*i*) based, in part, on the prior termination of a respondent's parental rights, nor does *Gach* support the proposition that a trial court lacks subject-matter jurisdiction over a minor if the petition asserts anticipatory neglect as one of several allegations. In short, the trial court had the authority to authorize the petition and take jurisdiction over the child.[1]

## B. RESPONDENT'S PLEA

Respondent asserts that an improper plea-taking procedure deprived the trial court of jurisdiction. However, the "valid exercise of the probate court's statutory jurisdiction is established by the contents of the petition after the probate judge or referee has found probable cause to believe that the allegations contained within the petitions are true." *In re Hatcher*, 443 Mich at 437. In this case, the initial and amended petitions alleged that respondent neglected LCS, thereby conferring subject-matter jurisdiction on the trial court. In her challenge to the plea-taking procedure, "respondent confuses the distinction between whether the court has subject[-]matter jurisdiction and whether the court properly exercised its discretion in applying that jurisdiction." *Id*. at 438. When "a termination occurs following the filing of a supplemental petition for termination after the issuance of the initial dispositional order[,]" any attack on the adjudication is an impermissible collateral attack. *In re SLH, AJH, & VAH*, 277 Mich App 662, 668; 747 NW2d 547 (2008). In this case, respondent's parental rights were terminated following a supplemental petition for termination, and respondent did not attempt to withdraw her plea in the trial court or appeal the order of adjudication. Therefore, respondent's challenge to the plea-taking procedure is an impermissible collateral attack, and she is not entitled to relief on this issue.

## C. STATUTORY GROUNDS FOR TERMINATION

Respondent contends that the trial court erred by finding statutory grounds for termination. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A trial court's findings of fact are clearly erroneous if "we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

Respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(c)(*i*) and (j). Under MCL 712A.19b(3)(c)(*i*), a court may terminate a respondent's parental rights if it finds by clear and convincing evidence that "182 or more days have elapsed since the issuance of an initial dispositional order," and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." A reasonable time to correct such conditions depends on the amount of time needed for the parent to rectify the conditions and the amount of time the child can wait. *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991).

---

[1] To the extent that respondent argues on appeal that the trial court erred by exercising jurisdiction over LCS, respondent cannot now collaterally challenge that exercise of jurisdiction. See *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008).

The trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*). The conditions that led to the adjudication were the prior termination of respondent's parental rights to two older children, her failure to improve the conditions that led to the prior termination, and the risk of harm to LCS resulting from respondent's association with a roommate with a CPS history and a boyfriend with a criminal sexual history involving a minor. Accordingly, several aspects of respondent's service plan were aimed at helping respondent develop tools to make appropriate decisions regarding intimate partners and maintain healthy relationships that would not pose a risk of harm to LCS. However, at the termination hearing, several service providers testified that respondent maintained relationships with at least three men with criminal sexual histories who could cause a risk of harm to LCS. Service providers additionally testified that respondent continued to defend these relationships and to minimize the men's convictions. Respondent denied that one of the relationships continued, even though two caseworkers had seen the man leave respondent's home the morning before the first day of the termination hearing. Accordingly, the trial court found that respondent failed to show that she had substantially benefited from the services provided because she had not eliminated unsafe friends and romantic partners from her life to keep LCS safe. Further, the trial court believed that respondent would need several more years to improve her circumstances, which was not a reasonable amount of time considering LCS's young age. Therefore, the trial court did not clearly err by finding that clear and convincing evidence supported the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

In addition, the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(j). Termination of parental rights is proper under MCL 712A.19b(3)(j) when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

Respondent complied with her service plan by obtaining and maintaining employment and housing. Respondent was also provided numerous services related to identifying and avoiding inappropriate relationships. However, contrary to the direction of both her caseworker and the trial court, respondent maintained contact with her abusive ex-husband and an ex-boyfriend with a criminal sexual history involving minors. In addition, she continued an intimate relationship with a man who sexually abused her as a child and attempted to rape her during the pendency of the case, although she later contended that he did not try to rape her. Moreover, respondent's father had his parental rights to respondent terminated for abusing her as a child, but respondent reconnected with her father and expressed an intention to maintain a relationship with him and introduce him to LCS. Respondent denied that many of these relationships continued, and she asserted that she would not expose LCS to inappropriate individuals in the future. The trial court impliedly rejected this testimony when it found that respondent continued to make "mistakes about men" and created a risk of harm to LCS. This Court will not interfere with the trial court's credibility determinations. *In re HRC*, 286 Mich 444, 459; 781 NW2d 105 (2009). Accordingly, the trial court did not clearly err by determining that clear and convincing evidence supported the termination of respondent's parental rights under MCL 712A.19b(3)(j).

## D. BEST-INTEREST DETERMINATION

Lastly, respondent argues that the trial court erred by finding that termination of respondent's parental rights was in LCS's best interest. This Court reviews for clear error a trial

court's determination that termination was in the child's best interests. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. In making the best interest determination, the trial court should weigh all of the evidence and may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted). Further considerations may include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, the trial court acknowledged that LCS was bonded with respondent and that respondent had "shown improvement" and weighed these findings against respondent's continued involvement in inappropriate relationships. The trial court emphasized that LCS's foster family had shown interest in adoption and that she needed permanence and stability, and the trial court expressed disbelief that respondent could rectify the conditions at issue within a reasonable time, finding that it would take several years. The trial court did not clearly err when it placed LCS's need for stability and permanency over respondent's bond with her. In sum, the trial court did not err by terminating respondent's parental rights.

We affirm.

/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan